UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

2004 JUL 30  P 5: 09

PETER ANDERSON, et. al.,     :
                              :     CIVIL NO. 3:03CV116(MRK)
           Plaintiffs     :

       v.                     :

GORDON R. ENGLAND, SECRETARY  :
OF THE NAVY,                :

          Defendant.     :     JULY 30, 2004

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 56 of the Local Rules

of Procedure for the District of Connecticut, and the Order of this Court, the Defendant, Gordon

R. England, Secretary of the Navy of the United States of America, through his undersigned

counsel, hereby respectfully submits this memorandum in support of his motion for summary

judgment in the above-captioned action.

At all times relevant to this case, Plaintiffs Peter Anderson, Christopher Wells and Philip

Kujawski[1] were employed by the Department of the Navy as civilian police officers at the

Submarine Base New London, in Groton, Connecticut (hereinafter "Subase New London").

Plaintiffs filed this action against the defendant on January 16, 2003, alleging that from

---

[1] The parties have reached an agreement that will settle all claims made by Plaintiff
Willie Cothran. Undersigned counsel for the defendant was advised by counsel for plaintiffs on
July 22, 2004, that Plaintiff Cothran has executed the settlement agreement and the original will
be forwarded to the undersigned in the next few days.  Thus, the defendant has included herein
facts pertaining to Plaintiff Cothran only to the extent they are relevant to the summary judgment
motion on the remaining plaintiffs' claims.

approximately January 2000 through January 2003, the Navy subjected them to a hostile work

environment based on their gender in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000e *et. seq.* [2] The essence of plaintiffs' claim is that Pamela Coleman, one of a

handful of females employed in the civilian police force at Subase New London and the only

female lieutenant/shift supervisor, created a sexually hostile work environment through the

frequent use of profanity and vulgarities. As demonstrated below, plaintiffs have not shown and

no reasonable factfinder could find that Pamela Coleman's conduct was gender-based and,

further, that it rises to the level of a hostile work environment as defined by the Supreme Court

and the Second Circuit Court of Appeals. Accordingly, the defendant is entitled to summary

judgment in his favor as to the complaint's one count.

## FACTUAL BACKGROUND

The Defendant has submitted a Statement of Undisputed Facts in accordance with Rule

56(a)1 of the Local Rules of Civil Procedure, as well as documentary evidence attached thereto,

which are wholly incorporated by reference herein. However, a brief factual summary follows.

At all times relevant to this case, Plaintiff Peter Anderson was employed by the

Department of the Navy as a civilian police officer at the Navy's Subase New London.

*Complaint ¶ 5; Ex. A-1, Anderson Dep. at 7-8.* [3] Plaintiffs Christopher Wells and Philip

---

[2] Plaintiffs also alleged in their Complaint that they were subjected to harassment based on age in violation of the Age Discrimination in Employment Act of 1967. See *Complaint, Count 1.* However, the age discrimination claims were dismissed in December 2003, pursuant to the parties' Stipulation of Partial Dismissal. See *Defendant's Local Rule 56(a)1 Statement of Undisputed Facts, ¶ 34 and Ex. H.*

[3] Plaintiff Anderson, as noted *infra*, retired from the civilian police force in September 2002. See *Ex. A-1, Anderson Dep. at 7-8.*

2

Kujawski are employed by the Department of the Navy as civilian police officers at the Navy's Subase New London. *Complaint ¶¶ 7-8; Ex. C-1, Wells Dep. at 6, 22-23; Ex. D-1, Kujawski Dep. at 7-8.*[4]

The civilian police force personnel are assigned to one of three shifts, each shift supervised by a lieutenant. *Ex. A-1, Anderson Dep. at 10-13; Ex. D-2, Kujawski Dep. at 19; Ex. C-2, Wells Dep. at 5-6.* The shifts run from 7:00 a.m. to 3:30 p.m. (day shift); 3:00 p.m. to 11:30 p.m. (swing shift); and 11:00 p.m. to 7:30 a.m. (night). *Ex. A-1, Anderson Dep. at 43-44; Ex. E, Cothran Dep. at 16-17.* Shift supervisors have at most less than one hour of interaction per day with personnel not assigned to their shifts. See *Ex. A-1, Anderson Dep. at 43-44; Ex. E, Cothran Dep. at 19-20.*

Pamela Coleman is a female and a lieutenant police officer at Subase New London. *Complaint at ¶ 15; Ex. B, Coleman Dep. at 54-55.* Lieutenant Coleman is the *only* female who holds the rank of lieutenant in the civilian police force at the Subase New London. *Ex. B, Coleman Dep. at 54-55.* Indeed, the vast majority of the civilian police force on the Subase is comprised of males. *Complaint ¶ 13; Ex. A-1, Anderson Dep. at 45-46; Ex. B, Coleman Dep. at 20-21; Ex. C-2, Wells Dep. at 56-57.*

At all times relevant to this action, Plaintiff Anderson held the rank of Captain in the civilian police force, a position of superior rank to Lieutenant Coleman. *Ex. A-1, Anderson Dep. at 7-11; 39; Ex. B, Coleman Dep. at 58.* During the time in question, Plaintiff Anderson and

---

[4] Plaintiffs also alleged in their Complaint that Pamela Coleman harassed them based on age. See *Complaint, Count 1.* However, the plaintiffs' age discrimination claims were dismissed in December 2003, pursuant to a Stipulation of Partial Dismissal. See *Defendant's Local Rule 56(a)1 Statement of Undisputed Facts, ¶ 34 and Ex. H.*

3

Lieutenant Coleman were not assigned to work the same shift and had very little daily contact. *Ex. A-1, Anderson Dep. at 43-45; Ex. A-2, Anderson Dep. at 6.* Plaintiffs Wells and Kujawski are and were during the relevant time period officers of inferior rank to Lieutenant Coleman. *Ex. C-1, Wells Dep. at 6, 22-23; Ex. D-1, Kujawski Dep. at 7-8.* Between January 2000 and the present, Plaintiff Wells was assigned to Lieutenant Coleman's shift for less than three months. *Ex. C-2, Wells Dep. at 46.* Plaintiff Kujawski has never been assigned to Lieutenant Coleman's shift. *Ex. D-1, Kujawski Dep. at 14; Ex. D-2, Kujawski Dep. at 23; Ex. B, Coleman Dep. at 59-60.* Plaintiff Kujawski's interaction with Lieutenant Coleman consisted of mainly chance encounters at a designated smoking area. *Ex, D-1, Kujawski Dep. at 14-18, 31-32; Ex. D-2, Kujawski Dep. at 6-7.*

The use of profanity and vulgar language in this workplace by all employees is a common occurrence. *Ex. A-1, Anderson Dep. at 46-47, 50; Ex. A-2, Anderson Dep. at 10-12, 21; Ex. B, Coleman Dep. at 62-64; Ex. C-2, Wells Dep. at 49-52; Ex. D-1, Kujawski Dep. at 30-31; Ex. D-2, Kujawski Dep. at 8; Ex. F, Diedrichson Dep. at 38, 40-41.* Plaintiffs Kujawski and Cothran, like Pamela Coleman, have been the subject of complaints by others about their frequent use of profanity and vulgarities in the workplace. *Ex. A-2, Anderson Dep. at 18, 24-25; Ex. B, Coleman Dep. at 61; Ex. F, Diedrichson Dep. at 40-41; Ex. G, Sheridan Dep. at 43-44.* Plaintiffs Anderson and Wells admit that they occasionally use profanity in the workplace as well. *See Ex. A-1, Anderson Dep. at 46-47; Ex. C-2, Wells Dep. at 49.*

Plaintiffs filed the instant action alleging hostile work environment on January 16, 2003. Defendant now moves for summary judgment on plaintiffs' one count complaint.

4

**STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED R. CIV. P. (56)(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When ruling on a motion for summary judgment, the district court must construe the facts in a light most favorable to the non-movant, and resolve all ambiguities and draw all reasonable inferences against the moving party. See Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

As this district court has noted, "[g]enuineness runs to whether disputed factual issues could reasonably be resolved in favor of either party, while materiality runs to whether the dispute concerns facts that can affect the outcome under the applicable substantive law." Peralta v. Cendant Corp., 123 F. Supp. 2d 65, 75 (D. Conn. 2000) (citing Bickerstaff v. Vassar College, 196 F.3d 435, 445 (2d Cir. 1999), cert. denied, 520 U.S. 1242 (2000) and Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). "A reasonably disputed, legally essential issue is both genuine and material and must be resolved at trial." Id.

The Second Circuit has advised district courts to exercise caution when determining whether to enter summary judgment in an employment discrimination case where employer intent is at issue. Id. (citing Chertkova v. Connecticut General Life Insurance Co., 92 F.3d 81, 87 (2d Cir. 1996). Accord Burford v. McDonald's Corp., No. 3:02CV1738, 2004 WL 1392426 (D. Conn. June 2, 2004) (Kravitz, J.) (citing Tomka v. Seiler, 66 F.3d 1295, 1304 (2d Cir. 1995)). However, the Second Circuit has noted that the need to be cautious in this regard is "an unexceptionable principle of considerable lineage" McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d

5

Cir. 1994), aff'd, 109 F.3d 130 (2d Cir. 1997).   The Court in McLee expressly stated that

summary judgment is available in such cases.  Id.

Where no evidence exists or only conclusory allegations of discrimination have been

offered summary judgment may be appropriate.  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.

1985); Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994).  A party seeking to defeat a

summary judgment motion cannot rely upon "conclusory allegations or denials," but rather must

set forth "concrete particulars" showing that a trial is needed.  National Union Fire Ins. Co. v.

Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting R.G. Group Inc. v. Horn & Hardart

Co., 751 F.2d 69, 77 (2d Cir. 1984)); D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.

1998).  "Mere speculation or conjecture as to the true nature of facts [cannot] overcome the

motion."  Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) (quoting  Knight v. U.S. Fire Ins.

Co., 804 F.2d 9, 12 (2d Cir. 1986)).  The responding party "must show the existence of a

disputed material fact in light of the substantive law."  Peer Int'l Corp. v. Luna Records, Inc., 887

F. Supp. 560, 564 (S.D.N.Y. 1995).  In the absence of any disputed material fact, summary

judgment is appropriate.

## ARGUMENT

I.     **Summary Judgment Should Be Entered As A Matter of Law For Defendant.**

Plaintiffs allege a single count of sex-based discrimination "through the creation and

maintenance of a hostile work environment." *Complaint at ¶ 26.*  Essentially, plaintiffs claim that

co-worker Pamela Coleman, who is one of a handful of female civilian employees and the only

female lieutenant on the police force at the Navy's Subase New London, made comments of such

a nature so as to create a hostile work environment for the plaintiffs, who are male, *Complaint at*

6

¶ *19,* in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq.*

For plaintiffs to prevail on a hostile work environment claim under Title VII[5], they must

demonstrate harassment based on a protected factor that is "'sufficiently severe or pervasive to

alter the conditions of [plaintiffs'] employment and create an abusive working environment . . .

.' [and] a specific basis for imputing the conduct creating the hostile work environment to the

employer." Feingold v. New York, 366 F.3d 138, 149-50 (2d.Cir.2004) (quoting Alfano v.

Costello, 294 F.3d 365, 373 (2d.Cir.2002).  For the following reasons, their claims must fail.

### A.    Plaintiffs Have Failed To Demonstrate That Defendant Subjected Plaintiffs To Offensive Conduct Because Of Plaintiffs' Sex.

As an initial matter, plaintiffs must show some basis for inferring that the incidents

complained of were motivated by their gender. Oncale v. Sundowner Offshore Servs., Inc., 523

U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the

workplace; it is directed only at '*discrimin[ation]* ... because of ... sex.'") (quoting Title VII).

Thus, to establish their hostile work environment claim based on gender, plaintiffs must be able

to demonstrate that the conduct in question - - profane and vulgar remarks by Pamela Coleman -

- was motivated by the fact that they are male.  See Brown v. Henderson, 257 F.3d 246, 252 (2d

Cir.2001) ("It is axiomatic that mistreatment at work ... through subjection to a hostile work

environment ... is actionable under Title VII only when it occurs because of an employee's sex, or

other protected characteristic."); Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir.2001) (Plaintiffs

---

[5] A claim under Title VII may be established "either (1) by showing that [plaintiff] has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment." Feingold, 366 F.3d at 149 (citing Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001)).  Plaintiffs bring the current claim under the hostile work environment prong.

must show some basis for inferring incidents were actually discriminatory before they may be considered for purposes of hostile work environment). If Plaintiffs cannot make this showing - - that Pamela Coleman's comments were motivated by gender - - then their hostile work environment claim must fail. Compare O'Neal v. State University of New York, Heal Science Center Brooklyn, 2003 WL 1524664 at * 7 (E.D.N.Y. Mar. 24, 2003) (holding that to survive summary judgment plaintiff must show a gender motivated basis for harassment under Title VII hostile work environment claim). Plaintiffs cannot make this requisite showing of discriminatory motive.

First, most of plaintiffs' allegations encompass facially sex-neutral incidents. For instance, plaintiffs allege that Lieutenant Coleman has commented to a male police officer that he is a "fat fucking lazy bastard," *Complaint at ¶ 19(C),* "fucking stupid,"*Complaint at ¶ 19(D)*, "fat lazy motherfuckers" *Complaint at ¶ 19(E)*, "fucking losers that no one else wanted" *Complaint ¶ 19(F),* and that they "should be arrested for impersonating a police officer" *Complaint ¶ 19(F).*[6] Even assuming, *arguendo,* Lieutenant Coleman made such comments to male police officers in the security department, including plaintiffs, all of these comments, while unprofessional, are gender-neutral.[7]

_____

[6] Plaintiff Kujawski, who has never been supervised by Lieutenant Coleman, claims that in brief, chance encounters with Coleman at the smoke tree, she has belittled him by noting her superior law enforcement qualifications and asking him legal questions that he cannot answer. *Ex. D-1, Kujawski Dep. at 32-35.* See also *Anderson Dep. at 68-69* (testifying he overheard Lieutenant Coleman refer to Wells as a "fat fucking loser" and told him about it.).

[7] Indeed, Plaintiff Anderson submitted a sworn affidavit in an EEO complaint filed by Plaintiff Wells in which he stated that he did not believe Lieutenant Coleman's "attacks" were based on any protected factor. See *Ex. A-2, Anderson Dep. at 91-93.* Anderson also testified that, in his opinion, Coleman's "attacks" on Kujawski were based on the fact that Kujawski worked for him in the armory. *Id. at 79-80.* Plaintiffs Anderson and Lieutenant Coleman have a

8

Plaintiffs also allege they heard Lieutenant Coleman make comments specifically about men. For example, plaintiffs allege Lieutenant Coleman has been heard telling another male that males are good for only two things. See e.g, *Ex. A-2, Anderson Dep. at 7-13*; *Ex. C-2, Wells Dep. at 46-60.* In addition, Plaintiff Kujawski claims that in chance encounters with Pamela Coleman at the smoke tree, she has asked him if he has cheated on his wife and allegedly looked at his crotch. See *Ex. D-2, Kujawski Dep. at 24.*[8] Plaintiffs argue that given these alleged isolated incidents of gender-based attacks, the Court should infer a discriminatory motive into all of Pamela Coleman's statements. Compare Macri v. Newburgh Enlarged City School District, 2004 WL 1277990 at *9-10 (S.D.N.Y. June 8, 2004) (stating that male supervisor who was abusive to all employees undercut plaintiff's claim that his comments were discriminatory in nature). This reasoning failed in Macri and likewise should fail here.

In this regard, the district court in Macri explained:

> Despite Macri's attempt to apply these holdings here, her situation is markedly different from *Howley [v. Town of Stratford, 217 F.3dd 141 (2d Cir. 2000)]* and *Raniola [v. Bratton, 243 F.3d 610 (2d Cir. 2001)]*, where there was no indication that any of the female plaintiffs' male coworkers were also subjected to abusive treatment at work. When a female plaintiff has been the target of sex-based insults and, unlike her male coworkers, is later subjected to additional abuse that is facially sex-neutral, it may be reasonable to infer that any further mistreatment is also sex-based. In Macri's workplace, by contrast, everyone agrees that Smith was abusive, offensive, and insulting to everyone he supervised on the cleaning crew, not just to Macri.

2004 WL 1277990 at *10.

---

long history of mutual animosity.

[8] Anderson additionally testified that if he walked by Coleman and she was having a conversation with someone, he would overhear her use the word "male" and snicker at him. He took these as "personal attacks." *Ex. A-2, Anderson Dep. at 66.*

9

    Case 3:03-cv-00116-MRK    Document 32    Filed 07/30/2004    Page 10 of 14

In this case, Pamela Coleman works in an environment dominated by males. *Complaint at 13; Ex. A-1, Anderson Dep. at 45-46; Ex. B, Coleman Dep. at 20-21; Ex. C-2, Wells Dep. at 56-57.* Plaintiffs do not offer evidence that Pamela Coleman treated female co-workers any differently. In fact, Lieutenant Coleman has been the subject of complaints from both male and female employees about her abrasive personality and frequent use of profanity. *Ex. G, Sheridan Dep. at 43-44.* The frequency of Lieutenant Coleman's interaction with males versus females is simply a function of the male-dominated work environment. Under these circumstances, as in <u>Macri</u>, this Court should decline the invitation to impute discriminatory motive to Lieutenant Coleman's remarks.[9]

For the foregoing reasons, plaintiffs cannot prove a discriminatory basis for Pamela Coleman's conduct and therefore summary judgment should be granted for the defendant.

**B.    Plaintiffs Have Failed To Show Harassment So Severe And Pervasive To Alter The Conditions Of Plaintiffs' Employment.**

Even if the Court determines that plaintiffs have raised a genuine issue of material fact as to whether Pamela Coleman's conduct was based on gender, plaintiff nonetheless cannot demonstrate a hostile work environment. For plaintiffs to prevail on a claim of a hostile work environment, plaintiffs must show that the harassment that forms the source of the complaint was sufficiently severe or pervasive to alter the conditions of the [plaintiffs'] employment and create an abusive working environment. <u>Feingold,</u> 366 F.3d at 149; <u>See also Oncale,</u> 523 U.S. at 78 (a

---

[9] As noted previously, the use of profanity and vulgar language in this workplace by everyone, Pamela Coleman and plaintiffs included, while not condoned by the Navy, is the common. <u>See</u> *Ex. A-1, Anderson Dep. at 50; Ex. A-2, Anderson Dep. at 10-12; Ex. B, Coleman Dep. at 61-64; Ex. C-2, Wells Dep. at 49-52; Ex. D-1, Kujawski Dep. at 30-31; Ex. D-2, Kujawski Dep. at 8; Ex. F, Diedrichson Dep. at 38, 40-41.*

10

hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment") (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)). "[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998).

In determining whether a workplace is hostile or abusive, the court must look to the totality of the circumstances. <u>See Harris</u>, 510 U.S. at 23; <u>Richardson v. Metropolitan Dist. Commission, et. al.</u>, 2003 U.S. Dist. Lexis 12757 at *10-11 (D. Conn. July 23, 2003) (J. Hall) (citing <u>Harris</u>, 510 U.S. at 23). The circumstances viewed include, <u>inter alia,</u> "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris</u> 510 U.S. at 23. The incidents of harassment must be more than ". . . 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" <u>Alfano</u>, 294 F.3d at 274 (internal citation and quotation omitted).

In the instant action, plaintiffs cannot demonstrate that defendant's actions rise to the level of a hostile work environment. First, plaintiffs' contacts with Pamela Coleman were limited and episodic at best. In fact, Plaintiff Anderson testified at his deposition that he went out of his way to avoid Pamela Coleman. *Ex. A-2, Anderson Dep. at 6.* Plaintiff Wells worked on Pamela Coleman's shift for less than three months and then was reassigned to another shift. *Ex. C-2, Wells Dep. at 45.* Plaintiff Kujawski was never assigned to Pamela Coleman's shift and

11

had limited daily contact with her. *Ex. D-2, Kujawski Dep. at 6-7, 23. Ex. A-1, Anderson Dep. at 43-44; Ex. A-2, Anderson Dep. at 6; Ex. C-2, Wells Dep. at 45; Ex. D-2, Kujawski Dep. at 6-7; Ex. E, Cothran Dep. at 19-20.* Given this limited contact, any alleged harassment of the plaintiffs by Lieutenant Coleman would have to be episodic. Further, plaintiffs do not allege, nor do their depositions transcripts reveal, any evidence to suggest that Pamela Coleman subjected any one of them to an isolated incident that would be considered "extremely serious" so as to raise an inference of a hostile work environment. Compare Howley v. Town of Stratford, 217 F.3d 141, 148 (2d Cir.2000) (finding hostile work environment where female firefighter was subjected to a lengthy and sexually explicit public tirade by coworker which created reasonable inference that any other harassment was sex-based).   Thus, plaintiffs cannot establish that the alleged harassment was pervasive or severe enough to create an objectively hostile or abusive work environment.

Moreover, the use of profanity and vulgar language in this workplace by all employees - - including some of the plaintiffs - - is a common occurrence. Ex. A-1, Anderson Dep. at 50; Ex. A-2, Anderson Dep. at 10-12; Ex. B, Coleman Dep. at 61-64; Ex. C-2, Wells Dep. at 49-52; Ex. D-1, Kujawski Dep. at 30-31; Ex. D-2, Kujawski Dep. at 8; Ex. F, Diedrichson Dep. at 38, 40-41. Pamela Coleman's comments, when viewed in light of the overall male-dominated work environment, are no more than mere offensive utterances. See Harris 510 U.S. at 23. As the Supreme Court has held, Title VII is not a "general civility code" to be used by the Court to police a work environment, such as this one, where all members of the workforce engage in "abusive" and "hostile" activities. Faragher, 524 U.S. at 788 (Title VII standards when "[p]roperly applied, . . will filter out complaints attacking the ordinary tribulations of the

12

workplace, such as sporadic use of abusive language, gender-related jokes and occasional

teasing.") (quoting Oncale, 523 U.S. at 80 (internal citation and quotation omitted). See also

Fairbrother v. Connecticut Dept. of Mental Health and Addiction Services, 306 F. Supp. 2d 154,

167 (D. Conn. 2003).[10]

For the reasons stated above, no reasonable jury would find that defendant created a

hostile work environment under Title VII. Accordingly, defendant's motion for summary

judgement should be granted.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court enter an

order granting summary judgment in its favor as to plaintiffs' one count complaint.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

*ON THE BRIEF:*

_for:_

John J. Ghidini, III
Student Intern                         LISA E. PERKINS
United States Attorney's Office        ASSISTANT UNITED STATES ATTORNEY
Hartford, Connecticut 06103            450 MAIN STREET, ROOM 328
                                       HARTFORD, CONNECTICUT 06103
                                       (860) 947-1101
                                       FEDERAL BAR NO. ct23164

---

[10] The Court should reject Plaintiff Peter Anderson's claim for the additional reason that
he was at all times superior to Lieutenant Coleman and could have, but did not take disciplinary
action against her. *Ex. A-1, Anderson Dep. at 34-35.* See,e.g., Burlington Indus., Inc. v. Ellerth,
524 U.S. 742, 761 (1998) (an employer is presumed liable when the alleged perpetrator of the
harassment was the victim's supervisor). Under these circumstances, no reasonable factfinder
would impute liability to the Navy for Lieutenant Coleman's alleged conduct relating to
Anderson.

13

## CERTIFICATE OF SERVICE

This is to certify that a copy of the within and foregoing Defendant's Memorandum in Support of Motion for Summary Judgment with attachments was sent via United States mail, postage prepaid, on this 30th day of July, 2004, to:

Stephen G. DeNigris, Esq.
2117 L Street NW, Suite 283
Washington, DC 20037-1524

Jonathan Gould, Esq.
214 Main Street
Hartford, CT 06106-1817

*Attorneys for Plaintiffs*

LISA E. PERKINS
ASSISTANT UNITED STATES ATTORNEY