UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER ANDERSON, et. al. | : |
| Plaintiffs, | : CIVIL NO. 3:03CV116(MRK) |
| v. | : |
| GORDON R. ENGLAND<br>Secretary of the Navy, | : |
| Defendant. | : |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 56, and Local Rule 56, plaintiffs through the undersigned counsel file their Response in Opposition to the Defendant's Motion for Summary Judgment. As ground for this response, plaintiffs contend that there are material facts in dispute which warrant the denial of summary judgment in the defendant's favor and that the defendant is not entitled to judgment as a matter of law.

**A.**

**Background**

Plaintiffs Peter Anderson, Christopher Wells and Philip Kujawski are current or former civilian police officers employed by the Department of the Navy at the Submarine Base New London, in Groton Connecticut. Plaintiffs filed this action against the defendant in 2003, alleging that the defendant subjected them to a hostile working environment based on their gender in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e-16, et. seq. (*Comp.* ¶*1*).[1]
As it applies to the facts of this case, the plaintiffs claimed that the defendant through the repeated acts of Lieutenant Pamela Coleman created a sexually hostile atmosphere. (*Comp.* ¶ 18)

The specific alleged acts complained of by the plaintiffs involved Coleman making lewd and vulgar remarks, telling police officers that all males are useless; that she has no use for any man; telling men that they are good for only one thing while staring down at their private parts and referring to males officers as fucking losers. (*Comp. ¶19A-19G); See also Plaintiffs' Local R. 56(a)(2) Statement of Material Facts In Dispute ¶¶6, 33, 35.*

Numerous complaints were filed by the plaintiffs. This culminated in an investigation by the defendant's Office of Inspector General. The Inspector General's Office report HL-00-103 substantiated and concluded that the "complainant" suffered harassment and slander due to the behavior of Lieutenant Coleman. (*Exh. G, p.2*) Furthermore, the investigation substantiated that Lieutenant Coleman created a hostile work environment which affects all those who worked around her. The investigation further substantiated that Lieutenant Coleman used inappropriate language and behavior on the job and creates stress for other employees. (*Exh. G. 2-3*) The defendant did not dispute these findings and responded to the IG report by commenting that:

> The root cause of the problem was the behavior of the aforementioned supervisor. This supervisor has been counseled several times regarding her behavior, tone, and approach by management including departmental leadership new since the report was generated.

*Id.* at 4.; *Def's Ans.* ¶*22*.

---

[1] The Complaint also alleged a claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621. Those claims were subsequently withdrawn by plaintiffs pursuant to a Stipulated Order of Voluntary Dismissal in December 2003.

The record also demonstrates disputed issues of fact as to the actual authority of then Captain Anderson vis-vis Lieutenant Coleman and the amount of interaction each plaintiff had with Coleman. *Plaintiffs' Local R. 56(a)(2) Statement of Material Facts In Dispute ¶5 (Contact with Coleman Varied and consisted of daily contact with her); ¶11 (Anderson was without supervisory authority and was considered a token captain); ¶12 (Anderson's position was not a position of greater authority than Coleman's); ¶15 (Anderson had a lot of daily contact with Coleman and there was always a good chance of seeing her); ¶19 (The rank of captain was a title without any supervisory authority; Anderson had no authority to discipline or take any formal action against Lieutenant Coleman; he was not in a position of greater authority than Coleman).*

As it applied to plaintiff Wells, the evidence demonstrates disputed issues of material fact as it applied to his contact with Lieutenant Coleman and her interactions with him. *Plaintiffs' Local R. 56(a)(2) Statement of Material Facts In Dispute ¶25 (Wells' work with Lieutenant Coleman was between three to six months).*

As applied to Plaintiff Kujawski, Lieutenant Coleman's conduct was repeated and egregious. *Plaintiffs' Local R. 56(a)(2) Statement of Material Facts In Dispute ¶¶ 33-34 (Kujawski's contact with Coleman was four to five times a day wherein she would refer to him as a "fucking loser." Kujawski's contact with Coleman was daily even after she went to the 3:30 p.m. - 11:30 p.m. tour); ¶35 (Kujawski could not ignore Coleman's comments because they were so frequent. her verbal abuse was so severe and continuous that when she wasn't calling Kujawski a "fucking loser" or questioning him as to whether he was cheating on his wife she was belittling him in front of other police officers.)*

As a result of this severe and pervasive atmosphere of hostility, the plaintiffs were required to seek medical attention for various stress related illnesses. Plaintiff Anderson retired from his position despite the fact that he was ready, willing and capable of continuing in his position.

**B.**

**The Summary Judgment Standard**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Fed. R. Civ. P. 56(c)*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Holt v. Kmi-Continental Inc.*, 95 F.3D 123 (2d Cir. 1996). The court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id*. at 255. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

To defeat a motion for summary judgment, the nonmoving party must do more than simply show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 575, 586 (1986). As the Supreme Court stated in *Anderson,* "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir. 1984). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a

conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1966).

In discrimination cases, the inquiry into whether the plaintiff's sex caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, matters that call for a "sparing" use of the summary judgment device because of juries' special advantages over judges in this area. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998); *accord Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998) (noting juries' possession of the "current real-life experience required in interpreting subtle sexual dynamics of the workplace based on nuances, subtle perceptions, and implicit communications").

### C.

### The Hostile Work Environment Standard

To show that they were subjected to sex discrimination by virtue of a hostile work environment, the plaintiffs must ultimately prove "conduct (1) that is `objectively' severe or pervasive--that is, [conduct that] creates an environment that a reasonable person would find hostile or abusive [the `objective' requirement]; (2) that the plaintiff `subjectively perceive[s]' as hostile or abusive [the `subjective' requirement]; and (3) that creates such an environment because of plaintiff's sex . . . [the `prohibited causal factor' requirement]." *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001); *See also Brown v. Henderson*, 257 F.3d 246 (2d Cir. 2001). As it applies to plaintiff Anderson, his claims against Coleman, a co-worker, he must also show (4) that the defendant is responsible for the continued hostility of the work environment. *See Distasio*, 157 F.3d at 62, supra.

More specifically, the plaintiff must show that the workplace was so severely permeated

with discriminatory intimidation, ridicule, and insult that the terms and conditions of their employment were thereby altered. *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001) (*citing Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

This test has objective and subjective elements: the misconduct shown must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness. *Brennan*, 192 F.3d at 318; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that "[w]e have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment").

In this Circuit it is well-settled that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace. *See, e.g., Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (vile and sexually explicit verbal abuse of a female firefighter that challenged her competence, was witnessed by a large group that included her subordinates, and created a justified fear that she would be left in peril at fire scenes); *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 437 (2d Cir. 1999) (observing that a single sexual assault may be sufficient to alter the terms and conditions of the victim's employment).

**D.**

**Plaintiffs Have Demonstrated That the Defendant
Subjected Them to Offensive Conduct Because of Their Sex**

Initially, the defendant claims that the Plaintiffs have failed to make a showing that Pamela Coleman's comments were motivated by gender. Moreover, the defendant claims that the plaintiffs allegations were "gender neutral." Simply stated, the evidence of record demonstrates clearly that Ms. Coleman's actions were motivated because of her general dislike for men. As an alleged professional police officer training and experience dictates that while unseemly language is part and parcel for a police department, Ms. Coleman's actions were not simply banter. Rather, she targeted individual male police officers for her blistering barrage of degradation. Indeed, Chief Robert Diedrichsen, Coleman's supervisor, described Lieutenant Coleman as a "vindictive person." (*Exh. H Diedrichsen Depo. Vol. I, 47*) Several examples from Chief Diedrichsen and other evidence demonstrate the ferocity with which Lieutenant Coleman could disrupt male employees and police officers in the workplace by what was directed at him:

- Calling Robert Diederichsen a "fucking idiot." (*Exh. H- Diederichsen Depo*. Exh. 4)

- Telling Robert Diederichsen that "I will never fucking work with you and you will never fucking sit in that fucking seat." (*Exh. H - Diederichsen Depo. Vol. I, 28*)

- Making grown men cry and being a "people eater." (*Id.* at 50-51)

- Ridiculing men for having "small dicks." (*Exh. I- Depo. Willie Cothran, Vol. I, 45*)

- Asserting that "all men are useless." *Id.*

- Telling Co-workers that she was going to "Fuck Lieutenant Stevens and

Lieutenant Anderson and do what ever it took to get them back for the RIF.  (*Exh. A - Anderson Depo. Vol. I , 16*)

- Telling Anderson that she can't understand why he refused to have sex with her. (*Exh. A. Anderson Depo., Vol. I, 28*)

- Approaching Plaintiff Anderson in an attempt to start a sexual relationship.  (*Exh. A. Anderson Depo. Vol. I, 32*)

- Referring to an individual as a "cocksucker."  (*Exh. B. Anderson Depo. Vol. 1I, 30*)

- Stating that males were useless and good only for sex.  (*Exh. B, Anderson Depo, Vol. II, 63*)

- Stating that Plaintiff Wells was "fat, stupid and lazy.  He's a lazy bastard." (*Exh. D. Wells Depo.*, Vol. II, 26)

- Making continued comments and statements to the plaintiffs and other employees that "All men are liars; all men are worthless; all men cheat; you'll cheat; you are a liar; you are a fucking idiot."  (Exh. D - *Wells Depo. Vol. II, 27*).

- Directing hostile comments towards Plaintiff Kujawski concerning his marriage; looking down at his crotch; stating that he was a "fucking loser." (Exh. E - *Kujawski Depo. Vol. I, 15, 17-19*)

All in all, this continued barrage of hatred and obscenities directed at male employees is substantial evidence from which a jury could reasonably conclude that the defendant created a hostile work environment.  These vehement attacks were anything but facially neutral as the defendant would suggest.  They were pointed and meant to inflict the maximum possible damage

to the employer-employee relationship. Moreover, the defendant's Office of the Inspector General concluded that Lieutenant Coleman created a hostile work environment as it applied to the plaintiffs.

The defendant's attempt to minimize the barrage of degrading incidents occurring over a two to three year period as "isolated." What the act demonstrate is a failure on the part of the defendant to rein in a vicious individual who was intent on making the working environment for men as degrading and miserable as possible. The evidence in the record clearly demonstrates that Coleman's conduct was pervasive, continuous, and venomous.

Defendant's cite to the District Court's decision in *Macri v. Newburgh Enlarged School Dist.*, 2004 WL 1277990 (S.D.N.Y. 2004), for the proposition that a male supervisor who was abusive to all employees undercut the plaintiff's claim that his comments were discriminatory. But such a contention ignores the Second Circuit's precedent that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace. *See, e.g., Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000). As the court wrote:

> "[t]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." Richardson v. New York State Department of Correctional Service, 180 F.3d 426, 439 (2d Cir. 1999) (internal quotation marks omitted).
>
> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required. Harris v. Forklift Systems, Inc., 510 U.S. at 23.

*Id.*

Without a doubt, the workplace had been transformed. Police officers and police supervisors alike made every effort to avoid Lieutenant Coleman. Lieutenant Coleman's unrestrained conduct eventually lead to an Inspector General Investigation. There was a continuous stream of complaints in the workplace to which management did little about.

Even assuming *arguendo* that these episodes occurred infrequently, the Second Circuit does not look to any specific number but evaluates the offending conduct and the effect it had on the workplace. As noted herein, each one of the plaintiffs suffered emotional stress which required medical treatment over the long term. Kujawski, by far the worst affected by Coleman's conduct lost 40-50 pounds, developed migraine headaches and was required to see a psychiatric counselor. These are all factual matters which should be resolved by a jury. Anderson, but for Coleman's conduct, would have not retired from the force.

The evidence of record demonstrates that material issues of fact remain to be resolved by a jury. As noted juries' possession of the "current real-life experience required in interpreting subtle sexual dynamics of the workplace based on nuances, subtle perceptions, and implicit communications" is warranted in the case at bar. The plaintiffs have demonstrated that the vile and threatening conduct of Pamela Coleman was pervasive, unwelcome and the proximate cause of the degradation they suffered while in the workplace. This conduct warrants judicial relief.

Dated: September 20, 2004
Washington, D.C

                                    Respectfully submitted,

**/s/ *Stephen G. DeNigris, Esq.***
Stephen G. DeNigris, Esq.
Federal Bar No. ct24396
Attorney for the Plaintiffs
Law Offices of Stephen G. De Nigris, P.C.
2100 M Street, N.W. Suite 170-283
Washington, DC 20037-1233

Virginia Office:
(703)416-1036
(703)416-1037 (fax)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER ANDERSON, et. al., | : | |
| Plaintiffs | : | CIVIL NO.:   3:03CV116(MRK) |
| v. | : | |
| GORDON R. ENGLAND<br>Secretary of the Navy, | : | |
| Defendant. | : | |

_____

**O R D E R**

Upon consideration of the Defendant's Motion for Summary Judgment, upon the argument of counsel, the papers of record and for other good cause shown, it is hereby

**ORDERED** that the Defendant's Motion for Summary judgement is

GRANTED/DENIED.

**SO ORDERED.**

Dated: New Haven, CT

_____, 2004.

_____
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Plaintiffs' Local Rule 56(a)(2) statement was sent by U.S. Mail, first class postage prepaid, to Lisa E. Perkins, Esq., Assistant United States Attorney, 450 Main Street, Room 328 Hartford, CT 06103 on the 21th day of September, 2004.

                                          ***/s/ Stephen G. DeNigris, Esq.***
                                          Stephen G. DeNigris, Esq.