# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PETER ANDERSON, et al.,                    :
                                           :
               Plaintiffs,         :        NO. 3:03CV116 (MRK)
                                           :
v.                                         :
                                           :
GORDON R. ENGLAND,                         :
Secretary of the Navy,                     :
                                           :
               Defendant.          :

## <u>RULING</u>

This case arises out of alleged gender-based harassment instigated by a female employee of the United States Navy, Lieutenant Pamela Coleman, against her male co-workers and subordinates, Plaintiffs Peter A. Anderson, Philip Kujawski, and Christopher R. Wells. Plaintiffs claim that Lieutenant Coleman's words and actions created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e *et seq.*, which should be imputed to the Defendant, Gordon R. England, the Secretary of the Navy.[1] Currently pending before the Court is Defendant's Motion for Summary Judgment [doc. #31]. For the reasons stated below, the Court DENIES Defendant's motion with respect to Officer Kujawski and Sergeant Wells, and GRANTS Defendant's motion with respect to Captain Anderson.

## I.

Summary judgment is appropriate only when "the pleadings, depositions, answers to

---

[1] Plaintiffs also originally brought an age discrimination claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621. However, the parties jointly stipulated to dismissal of this claim. *See* Stipulation of Partial Dismissal [doc. #15]. Furthermore, the parties have voluntarily stipulated to dismissal of all claims brought by Plaintiff Willie C. Cothran. *See* Stipulation of Voluntary Dismissal With Prejudice [doc. #42].

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court must draw all ambiguities and inferences in favor of the plaintiffs. *See Andersen*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Andersen*, 477 U.S. at 249-50.

## II.

The basic facts of this case are not in serious dispute. The Defendant, Gordon R. England, is the Secretary of the Navy. The Navy maintains a military and civilian police force (the "Security Department") at the Naval Submarine Base New London (the "Submarine Base"), in Groton Connecticut. Def.'s Local Rule 56(a)(1) Statement [doc. #33], at ¶ 1. Plaintiffs claim that the source of the alleged gender-based harassment in this case was a female supervisory police officer in the Security Department, Lieutenant Pamela Coleman. *See* Compl. [doc. #1], at

¶¶ 18-19.  At all relevant times, Lieutenant Coleman and Captain Anderson were employed by the Navy as supervisory police officers in the Security Department at the Submarine Base.  Def.'s Local Rule 56(a)(1) Statement [doc. #33], at ¶¶ 7, 10.  Sergeant Wells and Officer Kujawski were employed by the Navy as subordinate officers in the Security Department at the Submarine Base.  *Id.* at ¶¶ 24, 31.  Lieutenant Coleman supervised Sergeant Wells for approximately three months, though the exact time period is disputed.  *Compare id.* at ¶ 25 (estimating that Sergeant Wells worked on Lieutenant Coleman's shift for less than three months); *with* Pls.' Local Rule 56(a)(2) Statement [doc. #37], at ¶ 25 (estimating that Sergeant Wells worked on Lieutenant Coleman's shift for three to six months).  Lieutenant Coleman did not directly supervise either Captain Anderson or Officer Kujawski.  Plaintiffs present evidence of alleged gender-based statements and harassment initiated by Lieutenant Coleman on the grounds and in various buildings of the Submarine Base, including an area known as the "smoking tree" – a designated area for employees to smoke.  *See, e.g.*, *id.* at ¶¶ 5, 15, 17, 33, 34; *see also* Def.'s Mem. in Support of Mot. for Summ. J. [doc. #32], at 4.

### III.

To prevail on a gender-based hostile work environment claim, a plaintiff must establish two elements:

> "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."

*Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (quoted in *Petrosino v. Bell Atlantic*, 385 F.3d 210, 221 (2d Cir. 2004)).  The Court will address each element in turn.

### A.

The first element of a hostile work environment claim "has both an objective and subjective component: 'the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.' " *Petrosino*, 385 F.3d at 214 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Drawing all ambiguities and inferences in favor of the Plaintiffs, as the Court must on a motion for summary judgment, the Court concludes that all three Plaintiffs have presented sufficient evidence to allow a trier of fact to conclude that they subjectively perceived their work environment in the Security Department as hostile. Specifically, Plaintiffs assert that the alleged gender-based harassment and discrimination they claim to have been subjected to made it difficult for them to work in the Security Department, made them feel humiliated, made them feel that their job security was threatened and that they should seek job relocation, and made them seek medical attention for various stress related illnesses arising from the harassment. *See* Pls.' Opp'n to Mot. for Summ. J. [doc. #36], at 4; Compl. [doc. #1] at ¶¶ 31-37. "Determinations as to the weight to accord evidence or credibility assessments of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury." *Easterling v. Connecticut*, No. 3:02CV393(MRK), --- F. Supp. 2d --- , 2005 WL 292550, at *2 (D. Conn. Feb. 1, 2005) (citing *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)). At this stage of the proceeding, therefore, Officer Kujawski, Sergeant Wells, and Captain Anderson have provided sufficient evidence to satisfy the subjective prong of the hostile work environment test.

As for the objective prong of the first element of a hostile work environment claim, the

-4-

Second Circuit has instructed district courts as follows:

> The matter of whether the conduct alleged was so "severe or pervasive" as to create "an objectively hostile or abusive work environment," is to be decided based on the totality of the circumstances, in light of such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 & 23 (1993)).  The Second Circuit has also repeatedly cautioned district courts about setting the bar too high.  As that court recently commented:

> While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*."

*Terry*, 336 F.3d at 148 (alteration and emphasis in the original) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)) (quoted in *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)).

Here, there is substantial evidence that the work environment of the Security Department at the Submarine Base was a generally hostile one, largely due to the words and actions of Lieutenant Coleman.  In fact, the Navy's own investigation of an official complaint brought against Lieutenant Coleman found that she had "created a hostile work environment which affects all who must work around her" due to the fact she "is always cussing, using the 'F-word'. . . . [and] uses inappropriate language and behavior on the job and creates stress for other employees."  *See* Pls.' Local Rule 56(a)(2) Statement [doc. #37], Exhibit G, Commander Navy Region Northeast – Office of the Inspector General, Command Inquiry Completion Report on

Hotline Complaint Number HL-00-103, at 2-3.  All parties agree that Lieutenant Coleman was the subject of frequent complaints made by both male and female co-workers about her abrasive personality and use of profanity and vulgarity in the workplace.  Def.'s Local Rule 56(a)(1) Statement [doc. #33], at ¶ 9.

However, a hostile work environment, alone, is not enough to satisfy the first element of a hostile work environment claim.  Plaintiffs must also show that Lieutenant Coleman subjected them to the hostile work environment because of their gender.  The reason for this is that Title VII only prohibits "*discriminat[ion]* . . . because of . . . sex."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998) (emphasis in original).  Miserable working conditions do not, in and of themselves, violate Title VII.  Moreover, in determining whether an employee has been discriminated against "because of such individual's . . . sex," 42 U.S.C. § 2000-e, "in the absence of evidence suggesting that a plaintiff's sex was relevant, the fact that both male and female employees are treated similarly, if badly, does give rise to the inference that their mistreatment shared a common cause that was unrelated to their sex."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citing *Connecticut v. Teal*, 457 U.S. 440, 453-54 (1982)).  "Thus, a work environment which is equally harsh for both men and women cannot support a claim for sex discrimination."  *Petrosino*, 385 F.3d at 221 (internal quotations omitted).  Finally, a plaintiff's ability to make out a claim for gender-based hostile work environment "is not necessarily dependent on the gender . . . of the individuals involved. Rather, such a claim is dependent on whether there is evidence from which a reasonable trier of fact could conclude that the hostile work environment was created because of the plaintiff's gender."  *Miller v. Edward Jones & Co.*, No. 3:03CV0193 (MRK),  --- F. Supp. 2d --- , 2005 WL 292549, at *5 (D. Conn.

Jan. 25, 2005).

Though equal opportunity harassment is not actionable under Title VII, the Court believes that Officer Kujawski and Sergeant Wells have presented sufficient evidence at this stage that their gender was at least part of the reason for Lieutenant Coleman's harassment of them. *See, e.g.*, *Miller*, 2005 WL 292549, at *3-*7 (denying summary judgment on hostile work environment claim due to disputed issues of material fact); *Lupacchino v. ADP, Inc.*, No. 3:02CV2281(MRK), 2005 WL 293508, *4-*5 (D. Conn. Jan. 21, 2005) (same); *Burford v. McDonald's Corp.*, 321 F. Supp. 2d 358, 362-65 (D. Conn. 2004) (same). First, the Navy's own conclusion that the Security Department workplace was a hostile environment and Defendant's acknowledgment that Lieutenant Coleman was abrasive, regularly used profanity and vulgarity in the workplace, and caused stress among co-workers, at a minimum raises a material issue of fact regarding the existence of an objectively hostile or abusive work environment in the Security Department. Second, among other lewd and vulgar statements that Lieutenant Coleman allegedly directed to Officer Kujawski, she commented upon and questioned him regarding his sexual relations with his wife, at least one time while staring at his crotch. *See* Pls.' Opp'n to Mot. for Summ. J. [doc. #36], at 4; *see also* Def.'s Mot. for Summ. J. [doc. #31], Kujawski Deposition Vol. 1, Exhibit D-1, at 15, 17-19. In fact, at oral argument on November 15, 2004, Defendant's counsel conceded that Lieutenant Coleman's questions and comments regarding Officer Kujawski's sexual relations with his wife created a genuine issue of material fact as to whether his hostile work environment was based on his gender. Finally, Sergeant Wells alleges that Lieutenant Coleman continually called him "fat, stupid and lazy," and that she continually made comments to him (as well as to groups of employees) along the lines of: "All men are liars;

-7-

all men are worthless; all men cheat; you'll cheat; you are a liar; you are a fucking idiot."  Pls.'
Opp'n to Mot. for Summ. J. [doc. #36], at 4; *see also* Def.'s Mot. for Summ. J. [doc. #31], Wells
Deposition Vol. 2, Exhibit C-2, at 58-61.[2]

Insofar as all disputed issues of fact must be viewed in the light most favorable to the
party opposing summary judgment, *Petrosino*, 385 F.3d at 214 n.2, the Court concludes based
upon the current record that a reasonable juror could conclude that Officer Kujawski and
Sergeant Wells were subjected to an objectively hostile work environment based on their gender.
*See, e.g.*, *Patterson*, 375 F.3d at 227 ("Where reasonable jurors could disagree as to whether
alleged incidents . . . harassment would have adversely altered the working conditions of a
reasonable employee, the issue of whether a hostile work environment existed may not properly
be decided as a matter of law.").  Close cases such as that presented by Officer Kujawski and
Sergeant Wells are best left for the jury to decide.  *Cf. Richardson v. N.Y. Dept. of Corr. Serv.*,
180 F.3d 426, 437 (2d Cir. 1999) ("The existence of racial harassment in a hostile work
environment . . . . may thus be characterized as a mixed question of law and fact because it
involves the application of a legal standard to a particular set of facts.  Such mixed questions are
especially well-suited for jury determination and summary judgment may be granted only when
reasonable minds could not differ on the issue.") (internal quotations and citations omitted).

Captain Anderson's claim is not a close case, however.  It is undisputed that Lieutenant

---

[2] As to Sergeant Wells, Lieutenant Coleman directly supervised him for only
approximately three months – though, as mentioned above, the parties dispute the exact length of
time.  Regardless, three months of supervision is more than enough time to create a hostile work
environment.  *See, e.g.*, *Miller*, 2005 WL 292549, at *3 ("A plaintiff can establish a hostile work
environment by showing 'either that a single incident was extraordinarily severe, or that a series
of incidents were sufficiently continuous and concerted to have altered the conditions of her
working environment.' ") (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)).

Coleman never exercised any supervisory control over Captain Anderson. *See* Def.'s Mot. for

Summ. J. [doc. #31], Anderson Deposition Vol. 1, Exhibit A-1, at 39 ln. 8-10.[3]  And, as

confirmed at oral argument, Captain Anderson saw Lieutenant Coleman for *at most* a half hour

each day, often while merely passing one another in the halls or on the grounds of the Submarine

Base. *See also id.* at 43-45.  In fact, as he admits in his deposition, Captain Anderson did his best

to avoid Lieutenant Coleman. *See id.* at Anderson Deposition Vol. 2, Exhibit A-2, at 8 ln. 1-10.

Furthermore, from the record before the Court and as was confirmed at oral argument, there is no

evidence that Lieutenant Coleman made comments directly to Captain Anderson about sex or his

gender; rather the discussions and conversations between Captain Anderson and Lieutenant

Coleman (though often heated arguments using vulgar words) were sex and gender neutral.

     It is abundantly clear from the record that Captain Anderson and Lieutenant Coleman

were engaged in a long-standing feud on a number of issues, and the Court believes it is safe to

say that there was a high degree of enmity between them wholly aside from Captain Anderson's

gender. *See generally* Def.'s Mem. in Support of Mot. for Summ. J. [doc. #32], at 8-9 n.7.

Enmity between co-workers is not enough, however.  "Title VII does not establish a 'general

civility code' for the American workplace." *Petrosino*, 385 F.3d at 223 (quoting *Oncale*, 523

U.S. at 81).  Even viewing all the facts of this case in the light most favorable to him, at best

---

    [3] The parties dispute whether Captain Anderson was in fact Lieutenant Coleman's
supervisor. *Compare* Def.'s Local Rule 56(a)(1) Statement [doc. #33], at ¶ 11 ("Plaintiff Captain
Anderson was senior in position and rank to Lieutenant Pamela Coleman."); *with* Pls.' Local Rule
56(a)(2) Statement [doc. #37], at ¶ 11 ("While Captain Anderson held the rank of captain, it was
a title without any supervisory authority.  He was considered a token figurehead.  In this regard,
Captain Anderson had no authority to discipline or take any formal action against Lieutenant
Coleman.").  This factual dispute has no bearing on the Court's decision, and the Court will
assume for the purposes of this opinion that Captain Anderson was not Lieutenant Coleman's
supervisor.

Captain Anderson overheard (or was later told about) instances where Lieutenant Coleman made allegedly sexually degrading comments to others. Def.'s Mot. for Summ. J. [doc. #31], Anderson Deposition Vol. 1, Exhibit A-1, at 34 ln. 1-18; Pls.' Local Rule 56(a)(2) Statement [doc. #37], Anderson Deposition Vol. 1, Exhibit A, at 33 ln. 19-25; *id.* at Anderson Deposition Vol. 2, Exhibit B, at 21 ln. 23-25, 22 ln. 1-8, 30 ln. 15-22. Captain Anderson did not work with Lieutenant Coleman; he was a supervisor himself and was not her subordinate. As a consequence, Captain Anderson could, and often did, simply tell Lieutenant Coleman to stop talking to him and/or walk away without any fear of negative repercussions. *See, e.g.*, Pls.' Local Rule 56(a)(2) Statement [doc. #37], Anderson Deposition Vol. 2, at 63 ln. 18-25 ("Q: When you heard her make these comments, again, the males are useless she has no use for any male, did you, when you heard it on that occasion, stop her and direct her to knock it off? A: I, like I said earlier, I would tell her that's not appropriate. 'Psst, psst,' and then I'd leave.").

As miserable as Lieutenant Coleman may have been as a boss, she was not Captain Anderson's boss. He had the freedom to ignore her and avoid her – as he routinely did, spending very little time in her presence. Captain Anderson himself was not subjected to any gender-based harassment by Lieutenant Coleman, and his knowledge of most of her alleged gender-based harassment was obtained either second- or third-hand from others. Even if the Court does not "set the bar too high," *Feingold*, 366 F.3d at 149, and even if the Court takes all inferences in favor of Captain Anderson, the Court does not believe that the sort of sporadic and vicarious gender-based harassment experienced by Captain Anderson rises to the level of being "sufficiently severe or pervasive" so as to have created a work environment for Captain Anderson that was objectively hostile within the meaning of Title VII. Therefore, the Court concludes that

-10-

no reasonable jury could find that Captain Anderson was subjected to an objectively hostile work environment because of his gender. *See, e.g., Dawson v. Bumble & Bumble*, 398 F.3d 211, --- , 2005 WL 375934, at *11 (2d Cir. Feb. 17, 2005) (affirming district court determination that no triable issue of fact existed on plaintiff's hostile work environment claim based on sporadic offensive comments made by co-workers which were marginally gender-related); *Martin v. Town of Westport*, 329 F. Supp. 2d 318, 330 (D. Conn. 2004) (evidence of isolated offensive comments insufficient for plaintiff's hostile work environment to survive summary judgment).

### B.

To prevail on their claims, Officer Kujawski and Sergeant Wells must also demonstrate that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Petrosino*, 385 F.3d at 221 (internal quotations omitted). As set forth by the Supreme Court in *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), different standards govern an employer's liability depending upon whether the employee creating the hostile environment was the plaintiff's supervisor. Neither party briefed this issue, and the Defendant has not sought summary judgment on it. As a result, the Court need not, and does not, address this issue at this time.

### IV.

In sum, Defendant's Motion for Summary Judgment [doc. #31] is GRANTED as to Captain Anderson, and judgment shall enter for the Defendant on Captain Anderson's Title VII hostile work environment claim. However, Defendant's Motion for Summary Judgment [doc. #31] is DENIED as to Officer Kujawski and Sergeant Wells. By separate order, the Court will establish the schedule for submission of a Joint Trial Memorandum, the final pretrial conference,

and for trial on Officer Kujawski's and Sergeant Wells' Title VII hostile work environment

claims against the Defendant.


IT IS SO ORDERED.



/s/      Mark R. Kravitz
United States District Judge


**Dated at New Haven, Connecticut:  March 9, 2005.**